UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISABILITY RIGHTS NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>NORTHERN RIVERS FAMILY SERVICES, JOHN HENLEY, in his official capacity as the Chief Executive Officer of NORTHERN RIVERS FAMILY SERVICES, and NORTHEAST PARENT AND CHILD SOCIETY,<br><br>Defendants. | Case No. 1:16-cv-176 (GTS/CFH) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

DISABILITY RIGHTS NEW YORK
Michael W. Gadomski, Bar Roll # 519210
Julie M. Keegan
Jennifer Monthie
Cliff Zucker
725 Broadway, Suite 450
Albany, New York 12207
518-432-7861
518-427-6561 (fax) (not for service)
Michael.Gadomski@drny.org

## TABLE OF CONTENTS

I. INTRODUCTION ....1

II. FACTS ....1

III. ARGUMENT ....4

A. DRNY IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM AND IS ENTITLED TO ACCESS THE CHILDREN'S HOME RESIDENTIAL TREATMENT CENTER ....4

1. Plaintiff Received Complaints Alleging Abuse and Neglect ....5

2. R.W. and T.H. are Persons with Disabilities ....6

3. The Children's Home Residential Treatment Center is a Service Provider and Facility under the DD Act, PAIMI Act, and PAIR Act ....7

4. DRNY has the Required Basis to Seek Access to the Children's Home Residential Treatment Center ....8

B. DRNY HAS INDEPENDENT AUTHORITY TO MONITOR THE HEALTH AND SAFETY OF SERVICE RECIPIENTS ....9

C. DEFENDANTS' REFUSAL TO PERMIT DRNY ACCESS TO INVESTIGATE COMPLAINTS OF ABUSE AND NEGLECT WARRANTS A PRELIMINARY INJUNCTION ....10

DRNY is Likely to Succeed on the Merits of the Claim ....10

DRNY Will Suffer Irreparable Harm Without the Court's Intervention ....11

The Balance of Hardships Weighs Heavily in Favor of DRNY ....11

The Public Interest is Advanced by the Provision of Preliminary Relief ....12

IV. CONCLUSION ....13

## TABLE OF AUTHORITIES

**Cases**

Ala. Disabilities Advocacy Prog. V. J.S. Tarwater Dev. Ctr., 894 F. Supp. 424 (M.D. Ala. 1995)....11

Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc., 65 F.Supp.3d 1312 (S.D. Ala. 2014) ....6, 8

Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887 (2d Cir. 2015)....10

Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229 (2d Cir. 2006) ....6, 8, 9

Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, LLC, 152 F. Supp. 2d 1150 (N.D. Iowa 2001) ....9, 12

J.H. v. Hinds Cnty., Mississippi, 2011 WL 3047667 (S. D. Miss. July 25, 2011) ....6

Kentucky Protection & Advocacy Division v. Hall, 2001 WL 34792531 (W.D. Kentucky Sept. 24, 2001) ....6

Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch., 2015 WL 7423591 (E.D. Mich. Nov. 23, 2015) ....10, 12

Michigan Prot. & Advocacy Serv. Inc., v. Miller, 849 F. Supp. 1202 (W.D. Mich. 1994)....6, 7

Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong, 266 F.Supp.2d 303 (D. Conn. 2003)....6, 11

Prot. & Advocacy Sys., Inc. v. Freudenthal, 412 F.Supp.2d 1211 (D. Wyo. 2006)....9

Robbins v. Budke, 739 F. Supp. 1479 (D.N.M. 1990) ....9

Wisconsin Coalition for Advocacy, Inc. v. Czaplewski, 131 F.Supp.2d 1039 (E.D. Wis. 2001) .11

**Federal Statutes**

42 U.S.C. § 6000 et. seq....5, 6, 10, 12

42 U.S.C. § 10801-10827 ....5, 6, 10, 12

42 U.S.C. §§ 15001-15115 ....................5, 6, 10, 12
29 U.S.C. § 794e ....................5, 6, 10, 12

**Federal Regulations**

42 C.F.R. § 51.2 ....................5, 8

42 C.F.R. § 51.42 ....................5, 9, 10, 12

45 C.F.R. § 1386.19 ....................5

45 C.F.R. § 1386.27 ....................5, 7, 9, 10, 12

80 Fed. Reg. 44800 ....................7

**State Statutes**

N.Y. Executive Law § 558 ....................6

**Other Sources**

NATIONAL COUNCIL ON DISABILITY, YOUTH WITH DISABILITIES IN THE FOSTER CARE SYSTEM: BARRIERS TO SUCCESS AND PROPOSED POLICY SOLUTIONS (2008) ....................8

Plaintiff Disability Rights New York ("DRNY") respectfully submits this memorandum of law in support of their motion for preliminary injunction.

## INTRODUCTION

Disability Rights New York ("DRNY") has received multiple complaints of abuse and neglect of individuals with disabilities placed at Children's Home Residential Treatment Center ("RTC") operated by Northeast Parent & Child Society. DRNY brings this action to challenge Northern Rivers Family Services, John Henley, and Northeast Parent and Child Society's (collectively "Defendants") refusal to grant DRNY access to the Children's Home RTC. The denial of access by Defendants prevents DRNY, the designated Protection and Advocacy system for persons with disabilities in New York State, from fulfilling its federal law mandates of investigating allegations of abuse and neglect as well as providing legal advocacy services for individuals with disabilities. Immediate access must be granted to Plaintiff so it can carry out its mandate of investigating complaints of abuse and neglect.

## FACTS

On October 2, 2014, DRNY received a complaint by telephone alleging R.W., an individual with a disability residing at the Children's Home RTC operated by Defendants, was a victim of physical abuse by RTC staff. Dec. of Clune, ¶ 7. The Children's Home RTC is a residential program licensed by the New York State Office of Children and Family Services.

On January 7, 2015, DRNY received a separate complaint alleging T.H., also an individual with a disability residing at the Children's Home RTC, was a victim of abuse and neglect by RTC staff. Dec. of Clune, ¶ 9.

Due to the nature and credibility of the complaints received, DRNY determined an expanded investigation of the Children's Home RTC at Northeast Parent & Child Society was warranted. Dec. of Clune, ¶ 12. On May 1, 2015, DRNY sent Defendants a letter requesting records regarding the alleged abuse and neglect of T.H. and R.W., requesting facility access to investigate the incidents of abuse and neglect, and requesting access to monitor the health and safety of other residents at the Children's Home RTC. Dec. of Gadomski, ¶ 5. DRNY's letter specifically cited to federal statutes and regulations authorizing DRNY's access to records and facilities such as the RTC. Id. DRNY's letter attached two authorizations, signed by T.H.'s and R.W.'s legal guardians, permitting DRNY to access our clients' records. Dec. of Gadomski, ¶ 6.

On May 6, 2015, DRNY conducted a telephone conference with counsel for Defendants. Dec. of Gadomski, ¶ 7. Defendants requested proof of DRNY's designation as the P&A system in the State of New York and assurances that release of T.H. and R.W. records was in compliance with the Health Insurance Portability and Accountability Act ("HIPAA"). Id.

On May 18, 2015, DRNY sent a letter to Defendants with DRNY's designation as the P&A system in the State of New York and legal guidance from the U.S. Department of Health and Human Services allowing a covered entity to disclose protected health information to a state designated P&A system. Dec. of Gadomski, ¶ 8.

On May 28, 2015, DRNY conducted a second telephone conference with counsel for Defendants. Defendants asserted that neither T.H. nor R.W. were individuals with disabilities subject to DRNY's access jurisdiction under the DD Act, PAIMI Act, or PAIR Act. Dec. of Gadomski, ¶ 9.

On May 29, 2015, DRNY received a letter from Defendants. Dec. of Gadomski, ¶ 10. Defendants' letter states T.H. and R.W. are not people with disabilities and were not involved in

programs for people with disabilities. Dec. of Gadomski, ¶ 11. Defendants' letter states that Defendants will not grant DRNY access to records or the Children's Home RTC. Dec. of Gadomski, ¶ 12.

On August 17, 2015, DRNY sent a letter to Defendants restating its request to access the records of T.H. and R.W. and access the Children's Home RTC. Dec. of Gadomski, ¶ 13. DRNY's letter cites to: (1) legal authority granting P&A access to records and facilities if there is some likelihood that the individuals involved in the investigation may have a disability; (2) evidence that the Children's Home RTC provides supports and services to youth with disabilities; (3) evidence that T.H. and R.W. are persons with disabilities subject to the PAIMI, DD, or PAIR Acts; and (4) legal authority granting P&A access to records when their client, or a legal representative, has authorized such access. Dec. of Gadomski, ¶ 14.

On September 28, 2015, DRNY received a copy of a Case Summary Report from the New York State Justice Center for the Protection of People with Special Needs. Dec. of Clune, ¶ 17. The report is a complaint which substantiates allegations of abuse at the RTC involving R.W., a client of Plaintiff.

On October 1, 2015, a newspaper article was published by the Times Union describing the allegations of abuse involving R.W. Dec. of Clune, ¶ 18. The media report is a complaint which describes allegations of abuse at the RTC involving R.W., a client of Plaintiff.

On October 8, 2015, DRNY left a voice message with counsel for Defendants stating DRNY's intention to file suit to enforce its access authority and offering to conduct a telephone conference with counsel prior to filing suit. Dec. of Gadomski, ¶ 16. Defendants have not responded to the October 8, 2015 voice message. Dec. of Gadomski, ¶ 17.

On November 2, 2015, DRNY received a copy of an investigation report prepared by the Office for Children and Family Services. Dec. of Clune, ¶ 19. The report is a complaint which substantiates allegations of abuse and neglect at the RTC involving T.H., a client of Plaintiff.

DRNY advised counsel to the Defendants of its intention to initiate this litigation by order to show in a letter dated January 19, 2016. Dec. of Gadomski, ¶ 18. DRNY received no response from Defendants.

**ARGUMENT**

**POINT I**

**DRNY IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM AND IS ENTITLED TO ACCESS THE CHILDREN'S HOME RESIDENTIAL TREATMENT CENTER**

DRNY is New York State's designated Protection and Advocacy System and in that capacity operates the Protection and Advocacy for Individuals with Developmental Disabilities ("PADD") program, the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") program, and the Protection and Advocacy for Individual Rights ("PAIR") program.

In response to squalid conditions in New York's Willowbrook State School and other facilities, Congress passed the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act) of 1975 to protect the rights of persons with developmental disabilities. 42 U.S.C. § 6000 et seq. More recently Congress passed the Developmental Disabilities Assistance and Bill of Rights Act of 2000, which repealed and replaced the 1975 Act. 42 U.S.C. § 15001 et seq. The DD Act established the P&A system to advocate for persons with developmental disabilities and granted the P&A system authority to access service providers, residents, and their records. Id. at. § 15043.

The P&A system was expanded when Congress passed the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"). 42 U.S.C. § 10801 et seq. The PAIMI Act was modeled after the DD Act and it created a parallel P&A program for protecting individuals with mental illness. Id. at § 10801. The PAIMI program has similar federal authority to access individuals, facilities, and records. Id. at § 10805.

The Protection and Advocacy of Individual Rights ("PAIR") Act created a third P&A program to advocate for persons with disabilities that have neither developmental disabilities as defined by the DD Act nor mental illness as defined by the PAIMI Act. 29 U.S.C. § 794e. The PAIR Act expressly incorporates the authorities contained in the DD Act thereby giving the PAIR program the same access authority to protect and advocate for persons with disabilities. Id. at § 794e(f)(2).

Together the DD Act, PAIMI Act, and PAIR Act provides DRNY with broad access authority to advocate and pursue legal remedies for persons with disabilities.

**Plaintiff Received Complaints Alleging Abuse and Neglect**

DRNY received multiple complaints that residents in Defendants' Children's Home RTC have been subject to abuse and neglect. The implementing regulations of the DD Act and PAIMI Act define a complaint as "any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual [with a developmental disability or mental illness]." 42 C.F.R. § 51.2; 45 C.F.R. § 1386.19. Under federal and state law, DRNY is authorized to investigate a complaint it receives that alleges abuse or neglect occurring in any public or private entity that provides care, services, treatment and habilitation to persons with disabilities. 42 U.S.C. §§ 15043(a)(2)(B) & (a)(2)(H); 45 C.F.R. §

1386.27(b); 42 U.S.C. §§ 10805(a)(1)(A) & (a)(3); 42 C.F.R. § 51.42(b); 29 U.S.C. § 794e(f)(2); and N.Y. Exec. Law § 558(b). Both the DD Act and PAIMI Act contain parallel provisions authorizing DRNY to access facilities and residents to conduct an investigation if an incident of abuse or neglect is reported to DRNY. 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A). The PAIR Act expressly incorporates these access provisions from the DD Act. 29 U.S.C. § 794e(f)(2).

**R.W. and T.H. are Persons with Disabilities**

R.W., a resident of the Defendants' RTC, reported to DRNY as having a developmental disability among other disabilities. Both R.W. and T.H. reported having mental illness and that such disabilities were directly related to their placement at the Defendants' RTC. DRNY opened an investigation in response to the complaints regarding R.W. and T.H.'s treatment at the Defendants' RTC.

Courts have consistently held that a P&A system does not have to "make a threshold showing" of mental illness or developmental disability in order to exercise its access authority. Office of Protection and Advocacy for Persons with Disabilities v. Armstrong, 266 F.Supp.2d 303, 314 (D. Conn. 2003); See also State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. Of Educ., 355 F.Supp.2d 649, 655, aff'd 464 F.3d 229 (2d Cir. 2007); Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc., 65 F.Supp.3d 1312, 1322 (S.D. Alabama 2014); J.H. v. Hinds Cnty., Mississippi, 2011 WL 3047667, at *4 (S.D. Miss. July 25, 2011); Michigan Prot. & Advocacy Serv., Inc. v. Miller, 849 F. Supp. 1202, 1207 (W.D. Mich. 1994). Indeed, courts have recognized that a requirement of such a threshold would frustrate Congressional intent to have independent P&A's investigate abuse and neglect claims on behalf of people with disabilities. Armstrong, supra, 266 F.Supp.2d at 315; See J.H. v. Hinds Cty, supra,

2011 WL 3047667 at *5 (rejecting threshold showing requirement as "inconsistent with the purpose of the P & A statutes"); Kentucky Protection & Advocacy Division v. Hall, 2001 WL 34792531 at *2 (W.D. Kentucky 2001) ("[d]emanding a conclusive, individualized showing of developmental disability or mental illness before permitting [access] would reserve to Defendant a gatekeeping function contrary to the specific terms and general purpose of the [P&A]Acts"); Michigan Protection & Advocacy Service, 849 F.Supp. 1202, 1207 (W.D. Mich. 1994). Instead, the courts have universally granted P&As access to records and facilities if there is some likelihood that the individuals involved in the investigation may have a disability. Michigan Protection & Advocacy Service, 849 F.Supp. 1202, 1207–08.

**The Children's Home Residential Treatment Center is a Service Provider and Facility under the DD Act, PAIMI Act, and PAIR Act**

The DD Act gives DRNY authority to investigate incidents of abuse and neglect of individuals with developmental disabilities when DRNY receives a complaint of abuse or neglect. 42 U.S.C. §§ 15043(a)(2)(B) & (a)(2)(H). The implementing regulations grant DRNY access to service providers of individuals with developmental disabilities in order to conduct a full investigation of an incident of abuse or neglect. 45 C.F.R. § 1386.27(b). The term "service provider" is not explicitly defined by the regulations to ensure that P&A systems are able to access persons with disabilities wherever they are located. See Developmental Disabilities Program, 80 Fed. Reg. 44800 (July 27, 2015) (codified at 45 C.F.R. parts 1386) (stating "the law is not explicit about who might be providing such services, intentionally leaving this flexibility to evolve with systems.").

Pursuant to the PAIMI Act, DRNY has authority to access facilities in the State providing care or treatment to persons with mental illness. 42 U.S.C. § 10805(a)(3); Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 239 (2d

Cir. 2006). Care and treatment is defined as "services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation." 42 C.F.R. § 51.2. The regulations further clarify that DRNY is authorized reasonable unaccompanied access to these facilities in order to conduct a full investigation of an incident of abuse or neglect. 42 C.F.R. § 51.42(b).

The National Council on Disability defines a residential treatment center as "[a] facility whose primary purpose is to provide individually planned programs of mental health treatment in conjunction with residential care for seriously emotionally disturbed children and youth." NATIONAL COUNCIL ON DISABILITY, YOUTH WITH DISABILITIES IN THE FOSTER CARE SYSTEM: BARRIERS TO SUCCESS AND PROPOSED POLICY SOLUTIONS 146 (2008). Given that the primary function of Defendants' RTC is providing care and treatment for children with disabilities, the Defendants must defer to DRNY's legal authority to investigate and monitor.

**DRNY has the Required Basis to Seek Access to the Children's Home Residential Treatment Center**

DRNY received multiple complaints alleging and confirming abuse and neglect at the Defendants' RTC. As a facility providing care and treatment to children with disabilities within the meaning of the DD Act, PAIMI Act, and PAIR Act, Defendants are subject to DRNY's access authority to investigate allegations of abuse and neglect and monitor the rights and safety of residents. Connecticut Office of Prot. & Advocacy for Persons With Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 238–39 (2d Cir. 2006). See Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc., 65 F.Supp.3d 1312, 1322 (S.D. Ala. 2014) (holding a facility providing treatment to children with mental health and emotional disorders as within the purview of Plaintiff's P&A access authority);

## POINT II

## DRNY HAS INDEPENDENT AUTHORITY TO MONITOR THE HEALTH AND SAFETY OF SERVICE RECIPIENTS

DRNY has independent authority to gain access to service providers and facilities for purposes of monitoring the health and safety of service recipients. 45 C.F.R. § 1386.27(c); 42 C.F.R. § 51.42(c). In other words, DRNY does not have to rely on a complaint of abuse or neglect or establish probable cause to believe that such an incident occurred in order to conduct monitoring activities. Id. The implementing regulations of the DD Act and the PAIMI Act provide DRNY with reasonable, unaccompanied access to "service providers" and "facilities" to monitor residents and disseminate information. Id.

A P & A's monitoring authority was specifically recognized by the Second Circuit Court of Appeals in Hartford: "the [DD] statute provides access to service recipients for both investigatory and monitoring purposes . . . the requirement in § 15043(a)(2)(B) that a P & A system have the authority under the [DD] Act to investigate specific incidents does not limit a P & A system to that power alone." Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 242 (2d Cir. 2006). The court elaborated and held "[t]his language indicates that Congress intended P&A systems not simply to respond to reports of maltreatment, but also to monitor facilities in order to prevent abuse or neglect." Id. Other federal courts have likewise affirmed P&A authority to conduct monitoring. Prot. & Advocacy Sys., Inc. v. Freudenthal, 412 F. Supp. 2d 1211 (D. Wyo. 2006); Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C., 152 F. Supp. 2d 1150 (N.D. Iowa 2001); Robbins v. Budke, 739 F. Supp. 1479 (D.N.M. 1990). Accordingly, DRNY has legal authority to access the Children's Home Residential Treatment Center to conduct monitoring activities because the RTC is a facility providing services to individuals with disabilities.

## POINT III

## DEFENDANTS' REFUSAL TO PERMIT DRNY ACCESS TO INVESTIGATE COMPLAINTS OF ABUSE AND NEGLECT WARRANTS A PRELIMINARY INJUNCTION

DRNY is entitled to injunctive relief because it suffers irreparable harm due to Defendants' obstruction of its statutory obligation to investigate complaints of abuse and neglect. "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or…sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (citations omitted).

### DRNY is Likely to Succeed on the Merits of its Claim

As set forth in detail in Point I, supra, the access requested by DRNY falls squarely within DRNY's federal access authority. The DD Act, PAIMI Act, and PAIR Act authorize DRNY access to public and private service providers or facilities, including residential treatment centers which provide services to individuals with developmental disabilities, mental illness, and other disabilities. 42 U.S.C. § 15043(a)(2)(B); 45 C.F.R. § 1386.27(b)(2); 42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.42(b); and 29 U.S.C. § 794e(f)(2). See also Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch., No. 15-12470, 2015 WL 7423591, at *2–3 (E.D. Mich. Nov. 23, 2015) (holding plaintiff P&A demonstrated likelihood to succeed on the merits because plaintiff was authorized to access records of clients of the P&A system and defendant school district had history of failing to promptly provide requested records).

**DRNY Will Suffer Irreparable Harm without the Court's Intervention**

DRNY will suffer irreparable harm if denied an order providing DRNY access to the Children's Home Residential Treatment Center. Based on multiple incidents of abuse and neglect reported to DRNY, DRNY's access to Defendants' RTC is fundamental to fulfilling its mandate to investigate incidents of abuse and neglect involving persons with disabilities. 42 U.S.C. §§ 15043(a)(2)(B)&(a)(2)(H); 42 U.S.C. §§ 10805(a)(1)(A)&(a)(3): 29 U.S.C. § 794e(f)(2). Federal courts have long held the denial of a Protection & Advocacy system's access authority causes it irreparable harm. See Prot. & Advocacy For Persons With Disabilities v. Armstrong, 266 F. Supp. 2d 303, 311 (D. Conn. 2003) (holding plaintiff P&A is irreparably harmed if it cannot access records to carry out its duty to investigate abuse and neglect). See also Wisconsin Coalition for Advocacy, Inc. v. Czaplewski, 131 F.Supp.2d 1039, 1051 (E.D. Wis. 2001) (holding "the defendants' refusal to provide [plaintiff] with records that [plaintiff] is entitled to review…does, in a very real and readily identifiable way, pose a threat to the plaintiff being able to discharge its obligations…no amount of damages will remedy that sustained harm."). The irreparable nature of the harm sustained by DRNY as a result of Defendant's refusal to provide access and the lack of an adequate remedy without the court's intervention supports plaintiff's motion for injunctive relief.

**The Balance of Hardships Weighs Heavily in Favor of DRNY**

Since DRNY is entitled by law to access the Defendants' RTC for purposes of investigation and monitoring, Defendants suffer no hardship. Defendants cannot claim an interest in avoiding investigations of abuse or neglect regarding individuals with disabilities. Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 499 (11th Cir. 1996). Furthermore, the interests of Defendants cannot rely on the privacy concerns of its residents

because DRNY has a federal right to access their facility and records with a corresponding duty of confidentiality. Iowa Prot. & Advocacy Servs. Inc. v. Gerard Treatment Programs, LLC, 152 F. Supp. 2d 1150, 1174–75 (N.D. Iowa 2001). Defendants would benefit from permitting DRNY access so DRNY may correct any issues regarding abuse and neglect at the Defendants' RTC.

In contrast, DRNY suffers hardship because it cannot fulfill its statutory duty to investigate incidents of abuse or neglect and monitor facilities to ensure compliance with the rights and safety of residents. 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2); 45 C.F.R. § 1386.27(c); 42 C.F.R. § 51.42(c). Access to Defendants' RTC and the records of T.H. and R.W. is essential to DRNY's obligation to fully investigate reports of abuse and neglect of persons with disabilities. The delay in access threatens DRNY's ability to interview witnesses who may move or otherwise become unavailable. Young residents, many of whom have disabilities and are wards of the State, remain at risk of injury, abuse, neglect or death because any potential actions by DRNY to abate abuse or neglect are frustrated by the delay.

**The Public Interest is Advanced by the Provision of Preliminary Relief**

The Children's Home Residential Treatment Center is a facility licensed by the Office for Children and Family Services. DRNY, as New York State's P&A system, is the primary organization charged with protecting and advocating for the rights of persons with disabilities in the state. The purpose of the P&A system is frustrated when Defendants refuse to provide access for months on end. Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch., No. 15-12470, 2015 WL 7423591, at *4 (E.D. Mich. Nov. 23, 2015). The public has an interest in ensuring individuals with disabilities receiving services licensed by the state are free from abuse and neglect.

## CONCLUSION

For all the above reasons, this Court should issue a preliminary injunction granting Plaintiff access to Defendant's facility and residents for purposes of investigation and monitoring.

Dated: Albany, NY
February 18, 2016

Respectfully submitted,

**/s/ Michael W. Gadomski**
Michael W. Gadomski
DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiff
725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861(518) 427-6561 (fax) (not for service)

MICHAEL W. GADOMSKI
Bar Roll No. 519210

JULIE M. KEEGAN
Bar Roll No. 518293

JENNIFER MONTHIE
Bar Roll No. 512427

CLIFF ZUCKER
Bar Roll No. 102871