UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DISABILITY RIGHTS NEW YORK,               )
                                          )
            Plaintiff,                    )
                                          )
            v.                            )
                                          )
NORTHERN RIVERS FAMILY                    )     Case No. 1:16-cv-176 (GTS/CFH)
SERVICES, JOHN HENLEY, in his             )
official capacity as the Chief Executive  )
Officer of NORTHERN RIVERS                )
FAMILY SERVICES, and NORTHEAST            )
PARENT AND CHILD SOCIETY,                 )
                                          )
            Defendants.                   )


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

DISABILITY RIGHTS NEW YORK
Michael W. Gadomski, Bar Roll # 519210
Julie M. Keegan
Jennifer Monthie
Cliff Zucker
725 Broadway, Suite 450
Albany, New York 12207
518-432-7861
518-427-6561 (fax) (not for service)
Michael.Gadomski@drny.org

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  FACTS ...........................................................................................................2

   A.  The Federal Protection and Advocacy System ..................................................2

   B.  Defendants' Failure to Provide Records and Access to the Children's Home ...................3

   C.  Procedural History ..............................................................................3

III.  LEGAL STANDARD...........................................................................................4

   A.  Motion to Dismiss................................................................................4

IV.  ARGUMENT ....................................................................................................5

   A.  THE COMPLAINT HAS SUFFICIENTLY PLEAD THAT DEFENDANTS ARE PROVIDING SERVICES TO PERSONS WITH DISABILITIES.....................................5

   B.  THE COMPLAINT HAS SUFFICIENTLY PLEAD THAT R.W. AND T.H. ARE PERSONS WITH DISABILITIES .........................................................................8

   C.  PLAINTIFF HAS AUTHORITY TO ACCESS THE CHILDREN'S HOME BECAUSE IT IS A SERVICE PROVIDER AND FACILITY...........................................................9

   D.  THE COMPLAINT SUFFICIENTLY ALLEGES THAT PLAINTIFF OBTAINED RECORD RELEASES FROM THE MOTHERS OF R.W. and T.H..............................11

   E.  DEFENDANT JOHN HENLEY IS AN APPROPRIATELY NAMED PARTY IN THIS ACTION .................................................................................................13

   F.  PLAINTIFF HAS ESTABLISHED ITS ENTITLEMENT TO A PRELIMINARY INJUNCTION..........................................................................................14

V.  CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc., 65 F.Supp.3d 1312 (S.D. Ala. 2014) ..................................................................................................................7, 8

Allaire Corp. v. Okumus, 433 F.3d 248 (2d Cir. 2006)...........................................................4, 12

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...........................................................................................9

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...............................................................4, 5, 8

Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229 (2d Cir. 2006) ......................................................................................................12

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010)....................................................5

Disability Rights New York v. N. Colonie Bd. of Educ., No. 1:14-CV-0744, 2016 WL 1122055 (N.D.N.Y. Mar. 21, 2016)...............................................................................6, 8, 11, 17

Finn v. Barney, 471 F. App'x 30 (2d Cir. 2012) ...........................................................................6

Hawaii Disability Rights Ctr. v. Cheung, No. 06-00605 DAELEK, 2007 WL 2106584 (D. Haw. July 13, 2007....................................................................................................................................12

Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen, 206 F.R.D. 630(S.D. Iowa 2001)................11

J.H. v. Hinds Cnty., Mississippi, 2011 WL 3047667 (S. D. Miss. July 25, 2011) .........................8

Kentucky Protection & Advocacy Division v. Hall, 2001 WL 34792531 (W.D. Kentucky Sept. 24, 2001) ..................................................................................................................................8, 9

Michigan Prot. & Advocacy Serv. Inc., v. Miller, 849 F. Supp. 1202 (W.D. Mich. 1994).......8, 11

Ohio Legal Rights Serv. v. Buckeye Ranch, Inc., 365 F. Supp. 2d 877, 879, 892–93 (S.D. Ohio 2005) .........................................................................................................................................14

Pennsylvania Prot. & Advocacy, Inc. v. Royer-Greaves Sch. For Blind, No. CIV. A. 98-3995, 1999 WL 179797 (E.D. Pa. Mar. 25, 1999)...................................................................................12

Planck v. Schenectady Cty., No. 1:12-CV-0336 GTS/DRH, 2012 WL 1977972 (N.D.N.Y. June 1, 2012). ..................................................................................................................................5

<u>Prot. & Advocacy for Persons with Disabilities v. Armstrong</u>, 266 F.Supp.2d 303 (D. Conn. 2003) ................................................................................................................8, 12, 13

<u>Robbins v. Budke</u>, 739 F. Supp. 1479 (D.N.M. 1990) ................................................12

<u>Wisconsin Coalition for Advocacy, Inc. v. Czaplewski</u>, 131 F.Supp.2d 1039 (E.D. Wis. 2001) .14

**Federal Statutes**

U.S Const. Art. VI................................................................................................................9

20 U.S.C. § 1401................................................................................................................16, 17

29 U.S.C. § 794e................................................................................................................1, 2, 15

42 U.S.C. § 10801-10827 ................................................................................................2, 10, 15, 16

42 U.S.C. §§ 15001-15115 ................................................................................................2, 6, 9, 15, 16

**Federal Regulations**

42 C.F.R. § 51.2................................................................................................................6, 10

42 C.F.R. § 51.42................................................................................................................3, 16

42 C.F.R. § 51.43................................................................................................................2, 12, 13

45 C.F.R. § 1386.26................................................................................................................2, 12, 13, 15

45 C.F.R. § 1386.27................................................................................................................2

80 Fed. Reg. 44800................................................................................................................10

**State Statutes**

N.Y. Education Law § 4002 ................................................................................................17

N.Y. Executive Law § 558................................................................................................10, 15

Plaintiff Disability Rights New York ("DRNY") respectfully submits this memorandum of law in opposition to Defendant John Henley's Cross Motion to Dismiss the Complaint and Defendants Northern Rivers Family Services and Northeastern Parent and Child Society's Motion to Dismiss the Complaint.

## I.     Introduction

Plaintiff, the designated Protection and Advocacy ("P&A") system for the State of New York, filed this suit to enforce its federal law rights to access records and conduct monitoring activities pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C §§ 15001–15115, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801–10851, and the Protection and Advocacy for Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e. These statutes are collectively referred to as the P&A Acts.

Pursuant to its legal authority, Plaintiff has made several requests to Defendants to access the records of two minor clients with disabilities, T.H. and R.W., and to monitor Defendants' facility, the Children's Home Residential Treatment Center ("Children's Home"), where T.H. and R.W. were allegedly abused and neglected by staff. Compl. ¶¶ 56–67. Defendants have repeatedly refused to provide Plaintiff with their clients' records and access to the Children's Home to conduct monitoring activities with current residents. Id.

Plaintiff commenced this action to compel Defendants to produce records and provide facility access as required by federal law. Compl. ¶¶ 1–7. Defendants moved to dismiss the complaint for failure to state a claim on which relief may be granted. Def.'s Mot. Dkt. No. 16, Def's Mot. Dkt. No. 28. In support of their motion, Defendants argue that Plaintiff has not adequately plead that the Children's Home provides services to children with disabilities and that

Plaintiff does not have access jurisdiction over Defendants.  Def.'s Mem. Law, Dkt. No. 16-2, Def.'s Mem. Law, Dkt. No. 28-2.  Defendants are mistaken as to what the law requires.  Plaintiff has pled sufficient facts to withstand a motion to dismiss, and the law clearly authorizes Plaintiff to obtain the relief sought.  Defendants' Motions to Dismiss should therefore be denied.

## II.  Facts

### a.  The Federal Protection and Advocacy System

Plaintiff, as New York State's P&A system, has broad statutory rights to provide protection and advocacy services to persons with disabilities in New York State.  Plaintiff is authorized to investigate complaints alleging abuse and neglect involving individuals with developmental disabilities, mental illness, and other disabilities which are reported to Plaintiff.  42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2).  This investigative authority includes the right to access records of any individual with a qualifying disability who is a client of the system and has authorized Plaintiff to have such access.  42 U.S.C. § 15043(a)(2)(I)(i); 42 U.S.C. § 10805(a)(4)(A); 29 U.S.C. § 794e(f)(2).  A service provider may only deny Plaintiff access to the records of an individual with a disability due to an alleged lack of authorization, by promptly providing Plaintiff with the name, address, and telephone number of the legal guardian or representative of the individual with the disability so Plaintiff may seek the guardian's authorization to access records.  45 C.F.R. § 1386.26; 42 C.F.R. § 51.43.

Aside from investigation activities, Plaintiff has independent monitoring authority which includes access to service providers and facilities to review compliance with the rights and safety of residents, educate individuals regarding the P&A system, and inspect all areas used by service recipients.  45 C.F.R. § 1386.27(c); 42 C.F.R. § 51.42(c).  Plaintiff's monitoring authority does not require receipt of a complaint or a determination of probable cause of abuse or neglect.  Id.

*b. Defendants' Failure to Provide Records and Access to the Children's Home*

Plaintiff has sent several requests to Defendants seeking records related to reported incidents of abuse and neglect at the Children's Home and physical access to conduct monitoring visits. Compl. ¶¶ 56–67. Plaintiff sent Defendants letters on May 1, 2015, May 18, 2015, and August 17, 2015, requesting the records of R.W. and T.H. and access to the Children's Home. Id. Plaintiff received additional complaints regarding R.W. and T.H. in the form of a newspaper article published on October 1, 2015, and receipt of substantiated investigation records from the NYS Justice Center for the Protection of People with Special Needs ("Justice Center") and the NYS Office of Children and Family Services ("OCFS") on September 28, 2015, and November 2, 2015. Compl. ¶¶ 68–73. Plaintiff contacted Defendants on October 8, 2015, stating its intention to file suit to enforce its federal law rights to access the records of R.W. and T.H. and physically access the Children's Home. Compl. ¶ 67. Defendants have failed to produce any records in response to these requests and continue denying Plaintiff physical access to the Children's Home. Compl. ¶¶ 56–67.

*c. Procedural History*

Plaintiff commenced this action on February 17, 2016, alleging Defendants' failure to provide Plaintiff with client records and access to the Children's Home violated the P&A Acts and their implementing regulations. Compl. ¶¶ 74–97, Dkt. No. 1. Plaintiff seeks declaratory and injunctive relief, as well as any other relief the Court deems appropriate. Compl. ¶ 9.

Plaintiff moved by Order to Show Cause for Preliminary Injunction on February 18, 2016. Pl.'s Mot. Prelim. Inj., Dkt. No. 4. In support of this motion, Plaintiff attached two affidavits and seven exhibits as evidence warranting the issuance of injunctive relief. Clune Dec., Dkt. No. 4-3, Gadomski Dec., Dkt. No. 4-4, Pl.'s Ex., Dkt. No. 4-6 to 4-12.

Plaintiff and Defendants appeared for an evidentiary hearing regarding Plaintiff's Motion for Preliminary Injunction on March 8, 2016. Hr'g Mins., Dkt. No. 26. Plaintiff produced two witnesses and eighteen exhibits in support of its Motion for Preliminary Injunction. Id.; Ex. List, Dkt. No. 27. Defendants offered no witnesses or other evidence in opposition.

On March 2, 2016, Defendant John Henley cross moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. Def.'s Cross Mot. Dismiss, Dkt. No. 16.

On March 17, 2016, Defendants Northern Rivers Family Services and Northeast Parent and Child Society moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. Def's Mot. Dismiss, Dkt. No. 28. Defendants' motion adopts and incorporates the arguments from Defendant John Henley's Motion to Dismiss. Id.

## III.    Legal Standard

### a.  Motion to Dismiss

To withstand a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, (2007). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). In contemplating a dismissal pursuant to Rule 12(b)(6), the court may consider the following submissions outside the four corners of the complaint: "(1) documents attached as an exhibit to the complaint or answer; (2) documents incorporated by reference in the complaint (and provided by the parties); (3) documents that, although not incorporated by reference, are 'integral' to the complaint; or (4) any matter of which

the court can take judicial notice for the factual background in the case." Planck v. Schenectady Cty., No. 1:12-CV-0336 GTS/DRH, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012). Therefore, in determining a motion to dismiss for failure to state a claim, a district court may consider matters extraneous to the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

## IV. Argument

Defendants attack the adequacy of the Complaint on three primary grounds: (1) that Defendants do not provide services to persons with disabilities, (2) that R.W. and T.H. are not persons with Disabilities, and (3) that Plaintiff has no authority over the Children's home because it is licensed by the NYS Office of Children and Family Services, and not by the NYS Office of Mental Health. The first and second grounds are factual questions that may not be resolved on a motion to dismiss, since all the allegations in the complaint and the reasonable inference therefrom are taken as true. The third ground is a legal question, which is addressed below.

### a. The Complaint has Sufficiently Plead that Defendants are Providing Services to Persons with Disabilities

The Complaint alleges that the Children's Home "provides care and treatment to youth with psychiatric, psychological and behavioral issues." Complaint ¶40. To defeat a motion to dismiss, Plaintiff need not prove that this is true, it need only "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, (2007). The allegation clearly meets this standard.

Defendants admit on their web site[1] that the services provided at the Children's Home include "specialized clinical services," "comprehensive assessments including psychiatric and psychological assessments," "dialectical behavior therapy," "individual counseling," "comprehensive behavior management system," "therapeutic crisis intervention," self-contained special education classrooms," and "Committee on Special Education evaluations." Children's Home Program Description, Zucker Aff. Ex. A., Dkt. No. 19-2. These activities place the Children's Home within the definitions of a service provider or facility because "[t]hese are the types of services, care and treatment contemplated by the P&A statutes" and the setting of the Children's Home, as an in-patient facility for troubled youth, "does not preclude it from investigation by a P&A system when the criteria of the P&A Statutes have been satisfied." 42 U.S.C. § 15043(a)(2)(H); 42 C.F.R. § 51.2; Disability Rights New York v. N. Colonie Bd. of Educ., No. 1:14-CV-0744, 2016 WL 1122055, at *5 (N.D.N.Y. Mar. 21, 2016).

The Complaint contains far more than conclusory allegations. Plaintiff's letter to Defendants, dated August 17, 2015, is referenced in the Complaint. Compl. ¶¶ 64–65; Gadomski Decl. Ex. 6, Dkt. No. 4-11. In this letter Plaintiff cites to R.W.'s Individualized Education Program classifying R.W. as a special education student with "emotional disturbance" as well as R.W.'s Individual Treatment Plan which lists a diagnosis of Schizophrenia. Gadomski Decl. Ex. 6, at 2, Dkt. No. 4-11. The letter also cites to telephone conferences between Plaintiff and T.H. in which T.H. reports having mental illness and not receiving adequate mental health services while residing at the Children's Home. Id. at 3. Inasmuch as Defendants do not deny that T.H. and R.W. resided

---

[1] Courts in this Circuit have taken judicial notice of substantially similar documents (including website disclosures and media reports) when considering motions to dismiss. Finn v. Barney, 471 F. App'x 30, 32 (2d Cir. 2012).

in their facility, Plaintiff's letter, referring to client records and client complaints, is evidence that

Defendants' Children's Home previously housed youth with mental illness.

Plaintiff's August 17, 2015 letter to Defendants also references a program description of

the Children's Home. Compl. ¶ 65. The letter summarizes the program description as follows:

> The program description for the Children's Residential Treatment Center describes
> a residential treatment program serving youth with 'emotional trauma' and 'mental
> health' issues. Residents are provided psychiatric and psychological services and
> they attend an alternative education program with self-contained classrooms and
> Committee on Special Education (CSE) evaluations. The clinical issues Northeast
> addresses at the Children's Residential Treatment Center and the services it
> provides to treat those issues is evidence that this residential program provides
> services and supports to children with mental illness, intellectual disabilities,
> developmental disabilities, and/or other disabilities.

Gadomski Decl. Ex. 6 at 2, Dkt. No. 4-11.

The program description is similar to the Defendants program in <u>Alabama Disabilities</u>

<u>Advocacy Program v. SafetyNet Youthcare, Inc.</u>, where the court held Plaintiff P&A was entitled

access to Defendant's moderate treatment program under the PAIMI Act. <u>SafetyNet</u>, 65 F. Supp.

3d at 1322. The Court noted Defendant's program was intended to provide:

> Room, board and an array of services for a child with moderate and/or serious
> emotional and/or behavioral management problems that interfere with the child's
> ability to function in the family, school and/or community setting in other than a
> residential environment. Moderate placement services are limited to children whose
> needs cannot be met in their own home, traditional foster home, basic residential
> care, or children who have reached their treatment goals in a more restrictive setting
> and are ready to be "stepped down.

<u>Id.</u> at 1315.

Based on this description, the court held there was evidence that some residents of the

aforementioned program "may suffer from mental illness or developmental disabilities based on

the diagnoses of those residents and their need for involved, daily care and support." <u>Id.</u> at 1322.

Here, Defendants provide very similar services to the defendant in <u>SafetyNet</u>, and these facts are

sufficient to support the plausible inference that the Children's Home is a facility and service

provider within the meaning of the P&A Acts.  See Kentucky Prot. & Advocacy Div. v. Hall, 2001 WL 34792531, at *1 (W.D. Ky. Sept. 24, 2001) (holding plaintiff P&A had shown sufficient evidence, in the form of defendant's informational materials, that minor residents of defendant's facility fell within plaintiff's P&A access authority).  Therefore, Plaintiff has adequately plead that the Children's Home provides services to persons with disabilities.

> b. *The Complaint has Sufficiently Plead that R.W. and T.H. are Persons with Disabilities*

Courts have consistently held that service providers may not require, as a prerequisite for granting access to records or facilities, that a Protection and Advocacy System ("P&A") make an individualized showing that those clients who are the subject of an investigation have a disability. Michigan Prot. & Advocacy Serv., Inc. v. Miller, 849 F. Supp. 1202, 1207 (W.D. Mich. 1994); Kentucky Prot. & Advocacy Div. v. Hall, No. CIV.A.3:01CV-538-H, 2001 WL 34792531, at *1 (W.D. Ky. Sept. 24, 2001); Prot. & Advocacy For Persons With Disabilities v. Armstrong, 266 F. Supp. 2d 303, 314–15 (D. Conn. 2003); J.H. ex rel. Gray v. Hinds Cty., Miss., No. 3:11-CV-327-DPJ-FKB, 2011 WL 3047667, at *4 (S.D. Miss. July 25, 2011); Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc., 65 F. Supp. 3d 1312, 1322 (S.D. Ala. 2014); Disability Rights New York v. N. Colonie Bd. of Educ., No. 1:14-CV-0744, 2016 WL 1122055, at *7 (N.D.N.Y. Mar. 21, 2016).  Instead, courts have held that "substantial evidence" that a facility has previously housed persons with disabilities and currently serves persons with disabilities is sufficient for a P&A to exercise their access authority.  Michigan, 849 F. Supp. at 1207; Kentucky, at *1; Armstrong, 266 F. Supp. 2d at 314; J.H. ex rel. Gray, at *4; SafetyNet, 65 F. Supp. 3d at 1322; N. Colonie, 2016 WL 1122055 at *8.

Nevertheless, Defendants' demand that Plaintiff plead an individualized showing of developmental disability or mental illness for R.W. or T.H. would reserve to Defendants "a

gatekeeping function contrary to the specific terms and general purpose of the Acts." Kentucky Prot. & Advocacy Div. v. Hall, No. CIV.A.3:01CV-538-H, 2001 WL 34792531, at *2 (W.D. Ky. Sept. 24, 2001).

Here, the complaint clearly and plausibly pleads that R.W. and T. H have disabilities. Complaint ¶¶ 44, 50. To defeat a motion to dismiss, Plaintiff need not prove R.W and T. H. have disabilities. Twombly, 550 U.S. at 570. But the allegation is not bare bones or implausible. The Complaint references letters to the Defendants that discuss evidence that the Children's Home previously housed and served individuals with disabilities, such as R.W. and T.H., and evidence that some current residents may have disabilities. Compl. ¶¶ 64–65; Gadomski Decl. Ex. 6, Dkt. No. 4-11. These assertions, along with case law negating the need for a threshold showing of disability, are sufficient to give this claim facial plausibility because Plaintiff has plead factual content which allows this court to draw the reasonable inference that Defendants provide services to children with disabilities and that R.W. and T.H. are persons with disabilities. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

     c.  *Plaintiff has Authority to Access the Children's Home Because it is a Service Provider and Facility*

Plaintiff's authority to access the Children's Home and the records of R.W. and T.H. is governed by Federal law. Under the DD Act, a P&A system shall have access "to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual." 42 U.S.C. § 15043(a)(2)(H). New regulations implementing the DD Act purposefully do not define a "service provider" in order to provide "flexibility" as the service system for individuals with developmental disabilities evolves. Developmental Disabilities Program, 80 FR 44800, 2015 WL 4504331. The PAIMI Act authorizes a P&A system access to facilities "providing care or treatment." 42 U.S.C. § 10805(a)(3). The implementing

regulations of the PAIMI Act define care or treatment as "services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment." 42 C.F.R. § 51.2.

Plaintiff is the "independent agency" designated as the State's Protection and Advocacy System. N.Y. Executive Law § 558. Under this statute, Plaintiff is authorized to "provide federal oversight of the state's system of care for individuals with disabilities, as ***defined in federal laws***." N.Y. Exec. Law § 558(b)(i) (emphasis added). If Plaintiff receives a complaint of abuse or neglect of an individual with a disability, then it shall have access to "any facility or part thereof serving such individual that is operated, certified or licensed ***by any office or agency of the state***. N.Y. Exec. Law § 558(b)(iii) (emphasis added).

Plaintiff's P&A authority is not limited by N.Y. Mental Hygiene Law § 1.03[2], by Jonathan's Law[3], or by any other State law to facilities licensed by the N.Y. Office of Mental Health or the N.Y. Office for Persons with Developmental Disabilities. N.Y. Mental Hygiene Law §§ 33.23, 33.25. N.Y. Executive Law authorizes Plaintiff (the designated "independent public or private agency") "to provide federal oversight of the state's system of care for individuals with disabilities, as defined in federal laws." N.Y. Exec. Law § 558(b)(i). Even if the New York statute purported to limit Plaintiff's access to facilities licensed by certain agencies, which it does not, the Supremacy Clause of the United States Constitution would nullify the state law in favor of the broader authority granted under the DD Act, the PAIMI Act, the PAIR Act, and it's implementing regulations. U.S Const. Art. VI, cl. 2; <u>Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen</u>, 206 F.R.D. 630, 636 (S.D. Iowa 2001)(to the extent that state law conflicts with the P&A Acts, "this

---

[2] N.Y. Mental Hygiene Law § 1.03 defines facility for the purposes of the Mental Hygiene Law, and not for Executive Law 558, which incorporates the definition of facility in the P&A Acts.
[3] Jonathan's Law concerns the rights of family members to received certain mental health records, and is irrelevant to Plaintiff's right to records under the P&A statutes.

court must give deference to the federal government's policy intentions with respect to enabling protection and advocacy system to investigate allegations of abuse and neglect"). In the PAIMI Act, Federal law expressly preempts state law regarding records access. Id. at 639. Defendants' claim that because it is licensed by the Office for Children and Family Services (OCFS) it is outside the scope of Plaintiff's authority is simply wrong.

Defendants argue the lack of a definition for "service provider" means that Plaintiff's complaint should be dismissed. Def. Mot. Dismiss at 26–27, Dkt. No. 16-2. The implementing regulations of the DD Act purposely do not provide an exhaustive list of service providers so that a wide range of locations where people with disabilities receive services are subject to the jurisdiction of the P&A system. See e.g., Michigan Prot. & Advocacy Serv., Inc. v. Miller, 849 F. Supp. 1202, 1207 (W.D. Mich. 1994) (holding "[t]he simple fact that DSS facilities are primarily concerned with education and rehabilitation does not prevent them from falling under the auspices of PAMII"); See also Disability Rights New York v. N. Colonie Bd. of Educ., No. 1:14-CV-0744, 2016 WL 1122055, at *5 (N.D.N.Y. Mar. 21, 2016) (public elementary school operating special class is a service provider because it provided services including counseling, evaluations, and various therapies which are "the type of services, care and treatment contemplated by the P&A Statutes"). Similarly, the Children's Home provides "psychiatric and psychological assessments," "dialectical behavior therapy," "individual counseling," "comprehensive behavior management system," and "therapeutic crisis intervention." Zucker Aff. Ex. A., Dkt. No. 19-2. Therefore, the Children's Home is subject to Plaintiff's P&A authority.

> **d.** *The Complaint Sufficiently Alleges that Plaintiff Obtained Record Releases from the Mothers of R.W. and T. H.*

The complaint clearly and plausibly alleges the mothers of R.W. and T. H. authorized Plaintiff to obtain their records from Defendants. Complaint ¶ 58. The allegations must be taken as true on a motion to dismiss. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006).

The implementing regulations of the DD Act and the PAIMI Act are very clear that any service provider or facility denying a P&A system access to records due to an alleged lack of authorization shall provide the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with a developmental disability or mental illness. 45 C.F.R. § 1386.26; 42 C.F.R. § 51.43; Robbins v. Budke, 739 F. Supp. 1479, 1489 (D.N.M. 1990); Pennsylvania Prot. & Advocacy, Inc. v. Royer-Greaves Sch. For Blind, No. CIV. A. 98-3995, 1999 WL 179797, at *10-11 (E.D. Pa. Mar. 25, 1999); Hawaii Disability Rights Ctr. v. Cheung, No. 06-00605 DAELEK, 2007 WL 2106584, at *5 (D. Haw. July 13, 2007). The courts have noted a facility blocking access to a P&A system bears the burden of showing the existence of a legal guardian or legal representative by providing the P&A system with a list of contact information for the guardians and representatives. Prot. & Advocacy for Persons with Disabilities v. Armstrong, 266 F. Supp. 2d 303, 317-18 (D. Conn. 2003) (citing Cramer v. Chiles, No. 98-43-MISC-T-26A, slip. op. (M.D. Fla. Sept. 1, 1998). For example, the Second Circuit has held federal law authorizes a P&A system to obtain the names of children with disabilities in a therapeutic educational program and the names of their legal guardians or representatives in order for the P&A system to contact the parents or guardians and seek their consent to access student records. Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 243–45 (2d Cir. 2006).

Plaintiff requested the records of R.W. and T.H. in writing on May 1, 2015 and in a second letter dated May 18, 2015. Gadomski Dec. Ex 2, 4, Dkt. No. 4-7, 4-9. When Defendants denied

Plaintiff access to the records of R.W. and T.H. in writing on May 29, 2015, their written statement of reasons for denying access did not state Plaintiff lacked proper authorization to access the records of R.W. and T.H. Gadomski Dec., Ex. 5, Dkt. No. 4-10. Defendants failed to meet their "burden to show the presence of a legal guardian, conservator, or legal representative" when they denied Plaintiff records and facility access. Prot. & Advocacy for Persons with Disabilities v. Armstrong, 266 F. Supp. 2d 303, 318 (D. Conn. 2003).

Furthermore, Defendants admit that they have no information indicating that the parents who signed the authorizations have somehow lost their parental rights. Def.'s Mem. of Law, at 20, Dkt. No. 16-2. So the Defendants had no basis for alleging that the authorizations were invalid. Id. Until this litigation commenced, they never challenged the authorization.

Defendants have completely failed to show how the mothers of R.W. and T.H. are not the appropriate persons to give consent. Gadomski Dec., Ex. 5, Dkt. No. 4-10. Defendants offered no evidence to support this contention at the preliminary injunction hearing. By continuing to deny access to the records, Defendants have violated the federal regulations implementing the DD Act and the PAIMI Act. 45 C.F.R. § 1386.26; 42 C.F.R. § 51.43.

### e. Defendant John Henley is an Appropriately Named Party in this Action

Plaintiff named John Henley as a defendant in his official capacity as the Chief Executive Officer of Northern Rivers Family Services, Inc. Compl. ¶ 21. In this capacity Mr. Henley is responsible for Defendants' compliance with federal law when Plaintiff requests client records and access to monitor the Children's Home. Id. at ¶ 22. If this court were to issue injunctive and declaratory relief in favor of Plaintiff, then Defendant John Henley, and his successors as chief executive officer, should be included in any order to ensure full compliance with Plaintiff's lawful request to access the records of R.W. and T.H. and physical access to monitor the Children's Home.

13

Federal courts have ordered injunctive or declaratory relief against the administrators of agencies that have denied P&As access to records and facilities. See Wisconsin Coal. for Advocacy, Inc. v. Czaplewski, 131 F. Supp. 2d 1039, 1052 (E.D. Wis. 2001) (enjoining defendants, including an individually-named administrator, from failing to provide plaintiff P&A with records of two individuals); Ohio Legal Rights Serv. v. Buckeye Ranch, Inc., 365 F. Supp. 2d 877, 879, 892–93 (S.D. Ohio 2005) (permanently enjoining defendants, including the president of a residential treatment facility for children with mental illness, from denying plaintiff P&A's request for injury records and restraint and seclusion logs). Plaintiff respectfully requests this court deny Defendants' demand to dismiss the claims against John Henley because Mr. Henley is essential to ensure compliance with all injunctive and declaratory relief awarded.

### f.  Plaintiff has Established its Entitlement to a Preliminary Injunction

Plaintiff incorporates its arguments for entitlement to preliminary injunction from their Memorandum of Law In Reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction as if fully set forth herein. Pl's Reply, Dkt. No. 19.

Defendants make several factual arguments that seem to go to the pending motion for a preliminary injunction and are not relevant to a motion to dismiss. Although the defendants have submitted no factual affidavits in support of the motion to dismiss, and offered no witnesses or documents at the preliminary injunction hearing, their memorandum of law attempts to rebut the factual allegations in the complaint and the evidence offered by Plaintiff at the preliminary injunction hearing through reliance on hearsay allegations in the attorneys' affidavits. The Court should ignore these hearsay allegations and the arguments which rely on them because the only issue on this motion is whether the Complaint alleges plausible facts that establish Plaintiff's

claims and because Defendants had a full opportunity to offer admissible evidence at the preliminary injunction hearing but failed to do so.

Defendants claim that the Complaint must be dismissed, or a preliminary injunction denied, because Plaintiff has not established that R.W. or T.H. are clients of Disability Rights New York. The short answer is that Plaintiff's authority to investigate allegations of abuse and neglect, and to access records pursuant to the consent of their mothers, is not contingent on whether or not they are clients. 42 U.S.C. § 15043 (a)(2)(B); 45 C.F.R. § 1386.25(a)(1); 42 U.S.C. §10805(a)(1)(A) and 29 U.S.C. § 794e (f)(2); NY Executive Law §558(b) (a state's P & A system has authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system). Plaintiff received complaints of abuse and neglect involving R.W. and T.H. as residents of the Children's Home. Compl. ¶ 43, 49. Plaintiff obtained authorizations signed by the mothers of R.W. and T.H. to access their children's records. Id. at ¶ 48, 55. Moreover, when Plaintiff requested records from Defendants, Plaintiff had established an attorney-client relationship with R.W. and T.H. because R.W. and T.H. reasonably expected Plaintiff to investigate allegations of abuse and neglect while they resided at the Children's Home and advocate for their legal rights as individuals with disabilities.

Defendants also argue that the Complaint should be dismissed, or a preliminary injunction denied, because of hearsay allegations in attorney affidavits and the memoranda of law alleging that the Children's Home is not a facility under the P&A statutes, and that the Children's Home does not care for children with disabilities. The attorney's affidavits are hearsay, and Defendants offered no witnesses or documents at the preliminary injunction hearing. Therefore, these allegations should be ignored.

At the hearing on the preliminary injunction motion, Plaintiff offered evidence that the Children's Home is "a location in which services, supports, and other assistance are provided" to individuals with developmental disabilities. 42 U.S.C. § 15043(a)(2)(H). A copy of T.H.'s Individualized Education Program is in evidence, which classifies T.H. as "Multiple Disabilities" including a Wechsler Full Scale IQ Score of 62. Zucker Aff. Ex. G, Dkt. No. 19-8, Ex. List, Dkt. No. 27. This is evidence that T.H. has a developmental disability or intellectual disability and he received services and supports at the Children's Home. The only logical conclusion from this evidence is that the Children's Home is a service provider under the DD Act. 42 U.S.C. § 15043(a)(2)(H).

Plaintiff also offered evidence at the hearing that the Children's Home renders "care or treatment for individuals with mental illness." 42 C.F.R. § 51.42(b). R.W.'s records in evidence show he is a student with emotional disturbance, had a clinical history of Bipolar disorder, and a diagnosis of schizophrenia. Zucker Aff. Ex.'s D–F, Dkt. No. 19–5, 19–6, 19-7, Ex. List, Dkt. No. 27. Additionally the clinical services at the Children's Home include psychiatric assessments, behavior therapy, and comprehensive behavior management among other services. Zucker Aff. Ex. A, Dkt. No. 19-2. This evidence demonstrates R.W. is a person with mental illness who received clinical services at the Children's Home, thereby subjecting this facility to Plaintiff's access authority under the PAIMI Act. 42 U.S.C. § 10805(a)(3).

Defendants bizarrely assert that R.W.'s Individualized Education Plan, which classifies him as emotionally disturbed, "has no bearing on whether R.W. suffers from a disability or mental illness." Def. Mot. Dismiss at 28, Dkt. No. 16-2. The Individuals with Disabilities Education Act defines a "child with a disability" as "a child with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness),

serious emotional disturbance…who, by reason thereof, needs special education and related services" 20 U.S.C. § 1401(3)(A)(i)–(ii) (emphasis added). Furthermore, every resident of the Children's Home attends the School at Northeast, which is an "853 school" serving students with disabilities. Zucker Aff., Ex. A, Dkt. No. 19-2.

R.W.'s classification as a student with a disability, who attended Defendants' school for students with disabilities, establishes that R.W. is a child with a disability who received special education services in a "special class" when he resided in Defendants' child-care institution. 20 U.S.C. § 1401(3)(A)(i); N.Y. Education Law § 4002. Therefore, R.W. is a person with a disability within the purview of the P&A statutes. See Disability Rights New York v. N. Colonie Bd. of Educ., No. 1:14-CV-0744, 2016 WL 1122055, at *9 (N.D.N.Y. Mar. 21, 2016) (holding "students receiving special education in a special class pursuant to an IDEA designation of a 'student with a disability' constitute disabled individuals pursuant to the P&A Statutes").

Records of T.H.'s disability are also in evidence. Plaintiff submitted T.H.'s Individualized Education Program and his Progress Report from Parsons/Northeast. Zucker Aff., Ex.'s G–H, Dkt. No. 19-8, 19-9. The IEP classifies T.H. with "Multiple Disabilities" and records a full-scale IQ score of 62 while the Progress Report shows Defendants were implementing an IEP for T.H. when he resided at the Children's Home. Id. This evidence clearly demonstrates T.H. has an intellectual or developmental disability and received special education services from Defendants while he resided at the Children's Home. Disability Rights New York v. N. Colonie Bd. of Educ., No. 1:14-CV-0744, 2016 WL 1122055, at *9 (N.D.N.Y. Mar. 21, 2016). Accordingly, the Children's Home is subject to the federal oversight authority of Plaintiff.

## V. Conclusion

For all the above reasons, this Court should deny Defendants' Motions to Dismiss.

Dated: Albany, NY
April 11, 2016

Respectfully submitted,


**/s/ Michael W. Gadomski**
Michael W. Gadomski
DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiff
725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861
(518) 427-6561 (fax) (not for service)

MICHAEL W. GADOMSKI
Bar Roll No. 519210

JULIE M. KEEGAN
Bar Roll No. 518293

JENNIFER MONTHIE
Bar Roll No. 512427

CLIFF ZUCKER
Bar Roll No. 102871